FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| MIMI WEISS, | No. 24-6609 |
| *Plaintiff - Appellant*, | D.C. No. 3:23-cv-03490-RS |
| v. | |
| THE PERMANENTE MEDICAL GROUP, INC., | OPINION |
| *Defendant - Appellee*. | |

Appeal from the United States District Court
for the Northern District of California
Richard G. Seeborg, District Judge, Presiding

Argued and Submitted October 21, 2025
San Francisco, California

Filed July 24, 2026

Before: Richard A. Paez, Carlos T. Bea, and Danielle J.
Forrest, Circuit Judges.

Opinion by Judge Forrest

# SUMMARY[*]

## Employment Discrimination

The panel reversed the district court's dismissal for failure to state a claim of an employment discrimination action brought by Mimi Weiss under Title VII and California law against The Permanente Medical Group, Inc. ("TPMG"), and remanded.

TPMG initially granted Weiss a religious exemption from its COVID-19 vaccine mandate for its employees. It later required Weiss to provide additional information so it could evaluate whether her beliefs were sincere. When she did not fully respond to the supplemental inquiry, TPMG revoked Weiss's exemption and terminated her because she failed to get vaccinated.

To state a prima facie case of failure to accommodate her religion under Title VII and California's Fair Employment and Housing Act, the plaintiff must show that (1) she had a bona fide religious belief, the practice of which conflicted with an employment duty; (2) she informed her employer of the belief and conflict; and (3) the employer threatened her with or subjected her to discriminatory treatment, including discharge, because of her inability to fulfill the job requirements.

The district court granted TPMG's motion to dismiss on the ground that Weiss failed to satisfy the second element of the prima facie case—she did not adequately allege that she

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

gave TPMG sufficient notice of the conflict between her beliefs and its vaccine mandate.

Addressing the notice requirement, the panel held that the employee must provide only enough information about her religious needs to permit the employer to understand the existence of an actual conflict between those needs and the employer's expectations. Applying this standard, the panel concluded that Weiss satisfied the second element of a prima facie case for purposes of the pleading stage because she plausibly alleged that she informed TPMG of her belief and its conflict with the vaccine mandate.

The panel addressed a privacy claim in an accompanying memorandum disposition and dissent.

---

**COUNSEL**

Adéle A. Keim (argued), Eric C. Rassbach, Amanda G. Dixon, and Phillip J. Allevato, Becket Fund for Religious Liberty, Washington, D.C.; Andrew Nahom, Certified Law Student; James A. Sonne and Megan R. Donley, Supervising Attorneys; Religious Liberty Clinic, Stanford Law School, Stanford, California; Alan J. Reinach and Jonathon Cherne, Church State Council, Westlake Village, California; for Plaintiff-Appellant.

Christian J. Rowley (argued), Galen P. Sallomi, and Sean T. Strauss, Seyfarth Shaw LLP, San Francisco, California, for Defendant-Appellee.

## OPINION

FORREST, Circuit Judge:

Mimi Weiss is a Christian Jew who was denied a religious exemption from the COVID-19 vaccine mandate imposed by her employer, The Permanente Medical Group (TPMG). TPMG initially granted Weiss her requested exemption, but after learning that some employees had submitted insincere religious-exemption requests, it required Weiss to provide additional information so it could evaluate whether her beliefs were sincere. When Weiss did not fully respond to TPMG's supplemental inquiry, TPMG revoked her exemption and terminated her because she failed to get vaccinated. Weiss sued under Title VII of the Civil Rights Act of 1964 (Title VII), California's Fair Employment and Housing Act (FEHA), and the California Constitution. TPMG moved to dismiss her federal and state statutory claims, arguing that Weiss had not alleged that she adequately notified TPMG of the conflict between her beliefs and its vaccine mandate.[1] The district court granted TPMG's motion as to each claim. We reverse and remand.

## BACKGROUND

As this appeal arises from a motion to dismiss, we accept the facts stated in Weiss's operative complaint and the

---

[1] TPMG also moved to dismiss Weiss's privacy claim raised under the California Constitution, arguing that she could neither establish that TPMG had violated her privacy rights by implementing a vaccine mandate nor overcome TPMG's countervailing interest in combatting the spread of COVID-19. We address this state constitutional issue in an accompanying memorandum disposition.

documents incorporated therein. *See Northstar Fin. Advisors Inc. v. Schwab Invs.*, 779 F.3d 1036, 1042 (9th Cir. 2015).

### A. TPMG's Vaccine Mandate

TPMG initiated a mandatory COVID-19 vaccination policy (Mandate) in August 2021. The Mandate required all TPMG employees to either provide proof of full vaccination status or acquire a valid exemption by September 30, 2021. If an employee failed to comply with the Mandate by the September 30 deadline, the employee would be put on unpaid leave for 60 days. If the employee failed to comply with the Mandate within this 60-day window, the employee would be terminated.

### B. Weiss's Religious Exemption Request

TPMG hired Weiss in August 2000, and she worked most recently as a Managerial Senior Consultant. This was a fully remote position in TPMG's health-engagement consulting department. Weiss adopted religious practices associated with Messianic Judaism in 2016, and she recommitted to her faith during the COVID-19 pandemic.

Shortly after TPMG imposed its Mandate, Weiss requested a religious exemption. She explained that her "religious beliefs as a Christian Jew do not allow [her] to receive a Covid-19 vaccine." She listed passages from Deuteronomy and 1 Corinthians and explained that the "COVID-19 vaccines go directly against [her] belief[s]." In particular, Weiss explained that because Jewish law required her to "maintain h[er] body and blood uncontaminated" and prohibited "needle wounds except for direct curative benefit," she "consider[ed] these . . . vaccines to represent a defilement of [her] body, blood[,] and soul."

On August 30, TPMG approved Weiss's request for a religious exemption from its vaccine requirement. TPMG informed Weiss that the approval was "provisional" and "subject to change based on frequently changing conditions, such as COVID-19 infection levels, and changes in public health guidance, legal requirements, and [TPMG] policies and practices."

Three weeks later, TPMG notified Weiss that, due to its findings and concerns about a pattern of insincere religious-exemption requests among its employees, it would be conducting additional review of all previously approved exemptions. The following month, TPMG told Weiss that more "information [wa]s needed . . . to further evaluate whether [she] ha[d] a sincerely held religious belief, practice, or observance that prevent[ed] [her] from receiving any COVID-19 vaccine." TPMG sent Weiss several supplemental questions, including:

- What else besides the COVID-19 vaccine do you refuse to put in your body as a result of your religious belief?

- Have you put this belief into practice in any other areas of your life?

- Do you currently take or have you ever taken medications of any kind (over the counter or prescription) as an adult? . . . If you answered yes: "When is the last time you took such medicine? Is the COVID-19 vaccine different from these medicines? If so, how?" Why does your religious belief prevent you from

receiving the COVID-19 vaccination but
not from taking other medications?

TPMG informed Weiss that if she "d[id] not provide complete information," it would decide her "exemption request based on the information [it] ha[d] obtained to date." Weiss answered only some of TPMG's supplemental questions. In response to the inquiry about whether she had taken other medications, Weiss asserted that because her "medical information and history is protected" and "private," she "w[ould] not answer questions about medicines that [she] may or may not have taken."

After receiving Weiss's responses to its supplemental questions, TPMG revoked Weiss's provisional religious exemption and placed her on unpaid leave the following week. Weiss contacted several TPMG supervisors, seeking an explanation for the denial or information about an appeal process. In these communications, Weiss reaffirmed her beliefs, her objections to the vaccines, and her frustration with the denial decision. None of the TPMG managers that Weiss contacted responded to her inquiries.

Weiss did not receive a COVID-19 vaccine, and she was terminated for failing to comply with TPMG's Mandate.

### C.  The Lawsuit

Weiss sued TPMG, alleging, among other things, that it failed to accommodate her religious beliefs in violation of Title VII and FEHA and failed to prevent religious discrimination and harassment under FEHA. The district court granted TPMG judgment on the pleadings based on Weiss's First Amended Complaint. *Weiss v. Permanente Med. Grp., Inc.* (*Weiss I*), 738 F. Supp. 3d 1217, 1220 (N.D. Cal. 2024).

In assessing "the adequacy of Weiss's notice to TPMG regarding the conflict between her religious beliefs and the [Mandate]," the district court concluded that the "generic explanations" in her initial exemption request "amounted to the kind of 'blanket privilege' that would have resulted in a 'limitless excuse for avoiding all unwanted obligations'" and "provided little basis for TPMG to evaluate the extent of her religious beliefs' potential conflict with the [Mandate]." *Id.* at 1223 (quoting *Finkbeiner v. Geisinger Clinic*, 623 F. Supp. 3d 458, 465–66 (M.D. Pa. 2022), *aff'd in part, rev'd in part*, No. 24-2844, 2026 WL 195416 (3d Cir. Jan. 26, 2026)). The district court also concluded that Weiss's answers to TPMG's supplemental questions were similarly inadequate. *Id.* at 1223–25. The district court reasoned that, between her two exemption submissions, Weiss "failed to aver plausibly that she adequately informed TPMG of the conflict between her religious beliefs and the [Mandate]." *Id.* at 1225. But the district court granted Weiss leave to amend, despite commenting that "it would appear that amendment would be futile." *Id.*

Weiss filed a Second Amended Complaint, again asserting claims under Title VII and FEHA and adding a claim that TPMG violated her right to informational privacy and bodily autonomy under the California Constitution. TPMG moved to dismiss this complaint for failure to state a claim upon which relief could be granted. *Weiss v. Permanente Med. Grp., Inc.* (*Weiss II*), 751 F. Supp. 3d 991, 994 (N.D. Cal. 2024). The district court granted TPMG's motion. With respect to the Title VII and FEHA claims, the district court concluded that Weiss failed to address the problems noted in its prior order. *See id.* at 994, 998. On her state constitutional claim, the district court determined that Weiss could neither establish an informational-privacy

claim nor rebut TPMG's countervailing interest in protecting public health. *Id.* at 996–97. Weiss timely appealed.

## DISCUSSION

"We review de novo an order granting a motion to dismiss for failure to state a claim." *Bolden-Hardge v. Off. of Cal. State Controller*, 63 F.4th 1215, 1220 (9th Cir. 2023). "[W]e accept 'as true all well-pleaded allegations of fact in the complaint' and construe them in the light most favorable to the non-moving party." *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1104 (9th Cir. 2020) (citation omitted).

Title VII prohibits employers from firing employees because of the employees' religion.[2] 42 U.S.C. § 2000e-2(a)(1). FEHA likewise forbids employers from discriminating against employees based on their religion. Cal. Gov't Code § 12940(a). "Both statutes require employers to accommodate [employees'] religious beliefs unless doing so would impose an undue hardship." *Bolden-Hardge*, 63 F.4th at 1222.

We analyze Title VII and FEHA failure-to-accommodate-religion claims under a burden-shifting framework. *Detwiler v. Mid-Columbia Med. Ctr.*, 156 F.4th 886, 893 (9th Cir. 2025). The employee "must first plead a prima facie case of failure to accommodate her religion." *Id.* If she makes this showing, "the employer must show it was nonetheless justified in refusing to accommodate" the employee's beliefs. *Id.* To state a prima facie case, the plaintiff must show that "(1) she had a bona fide religious

---

[2] Congress defined "religion" to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j); *see EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 771–72 (2015).

belief, the practice of which conflicted with an employment duty; (2) she informed her employer of the belief and conflict; and (3) the employer threatened her with or subjected her to discriminatory treatment, including discharge, because of her inability to fulfill the job requirements." *Id.* (citation modified) (quoting *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1438 (9th Cir. 1993)).

In this case, TMPG moved to dismiss Weiss's claims, arguing only that she had not sufficiently alleged the second element of the prima facie case—that she gave TPMG sufficient notice of the conflict between her religious beliefs and the Mandate. And it was on that basis that the district court resolved the case. Thus, we likewise limit our inquiry to the "notice requirement." *Heller*, 8 F.3d at 1439.

In *Heller*, we explained that a "sensible approach" to notice in this context is to require the employee to provide "only enough information about [her] religious needs to permit the employer to understand the existence of a conflict." *Id.*; *see Lawson v. Washington*, 296 F.3d 799, 804 (9th Cir. 2002) ("Pursuant to *Heller*, an employee need only inform his employer about his religious needs for the employer to understand the conflict between the employer's expectations and the employee's religious practices."). "Any greater notice requirement would permit an employer to delve into the religious practices of an employee in order to determine whether religion mandates the employee's adherence." *Heller*, 8 F.3d at 1439.[3] To be sure, "conclusory

---

[3] The Supreme Court's decision in *Abercrombie & Fitch Stores, Inc.* suggests that our conception of the notice requirement may be too formalistic because the determinative issue is the employer's *motive*, not what the employer knows about an employee's beliefs and how it knows

assertions" of conflict with religious beliefs are insufficient to satisfy the notice requirement, and an employee must provide enough information to put the employer on notice of an "actual conflict." *Bolden-Hardge*, 63 F.4th at 1223.

At issue in *Heller* was an employee's request for time off to attend his wife's Jewish conversion ceremony. 8 F.3d at 1437. The employee "explained his situation" to his supervisor and asked for two hours off, which was initially granted. *Id.* But a more-senior supervisor retracted the approved time off, and the employee was informed that if he missed work, he would be fired. *Id.* The employee was terminated after he refused to miss his wife's ceremony, and he sued his employer under Title VII. *Id.* In seeking dismissal of the lawsuit, the employer argued, in part, that the employee did not provide adequate notice of the conflict because he "never explained the nature of the ceremony." *Id.* at 1439. We rejected the employer's argument, concluding that it had sufficient notice of the employee's religious conflict because it knew that the employee was Jewish, that his wife was studying for conversion, and that he requested time off to attend her conversion ceremony. *Id.* We made clear that an inquiry into whether the employee's religion *required* him to attend the ceremony was beyond the scope of the notice requirement. *Id.*

---

it. *See* 575 U.S. at 773 ("An employer may not make an [employee]'s religious practice, confirmed or otherwise, a factor in employment decisions."). But we need not resolve this tension in this case because here, it is clear that TPMG's understanding of Weiss's beliefs was based only on her religious-exemption request and her answers to TPMG's supplemental questionnaire. Thus, we leave for another day the effect of *Abercrombie*, if any, on our requirement that an employee "inform[] his employer of [his] belief and conflict." *Heller*, 8 F.3d at 1438.

Applying these well-established principles to the present case, we have little difficulty concluding that Weiss satisfied Title VII's notice requirement. Weiss plausibly alleged that she provided notice of her religious conflict with the Mandate in her initial request for a religious exemption. She identified herself to TPMG management as "a Christian Jew" and described specific religious doctrines that she asserted prohibited her from receiving the COVID-19 vaccine. These doctrines included the Torah's prohibition against "accepting foreign material into our bodies," Deuteronomy's counsel against "needle wounds except for direct curative benefit," and the professed requirement under Jewish law to "maintain [one's] body and blood uncontaminated." She also stated that receiving a COVID-19 vaccine would be contrary to her belief that she should not "introduce foreign substances into [her] body temple that change how [her] Creator designed it."

TPMG argues that Weiss's initial exemption request failed to demonstrate a conflict between her religious beliefs and the Mandate because she had received other vaccines and did not explain why COVID-19 vaccines are different from the prior vaccines that she received. According to TPMG, because Weiss's initial request "established a basis to seek additional information," it "did not inform TPMG of a sincerely held religious belief conflicting with the Policy," and Weiss failed to cure this deficiency in her incomplete responses to TPMG's supplementary questions. We disagree.

Weiss acknowledged that she had previously received vaccinations, and she explained that her present concern arose not because the COVID-19 vaccine was different, but because her religious commitment had changed. Additionally, TPMG's initial approval of Weiss's request

for a religious exemption demonstrates that TPMG understood she was asserting a religious conflict with the company's Mandate. *See Baker v. Home Depot*, 445 F.3d 541, 547 (2d Cir. 2006). The approval notice acknowledged that Weiss was requesting "a [r]eligion-based exemption" and stated that an exemption had been approved "[b]ased on the information [Weiss] provided" on TPMG's religious-exemption request form. The approval notice further stated that, if Weiss's "views change[d], and she no longer ha[d] a sincerely held religious belief, practice, or observance that prevent[ed] [her] from receiving any COVID-19 vaccine," she had to comply with the Mandate. There is no suggestion that TPMG ever questioned that Weiss was asserting a *religious* objection to the Mandate. Thus, Weiss plausibly alleged that she provided sufficient information for TPMG to "understand the existence of a conflict" between her beliefs and its Mandate. *Heller*, 8 F.3d at 1439; *see Lawson*, 296 F.3d at 804.

The record does indicate that TPMG doubted the *sincerity* of Weiss's claimed religious conflict. TPMG's request for supplemental information explained that, in reviewing employees' religious-exemption requests, "it has come to our attention that many employees have submitted similar or nearly identical exemption requests containing language that was taken verbatim from various free and paid template forms available on the internet." Based on this and other findings, TPMG further scrutinized Weiss's request and asked for additional information about her religious beliefs and practices. The nature of TPMG's supplemental questions—inquiries about whether Weiss refused to take other substances based on her religious beliefs, why her religious beliefs prevented her from taking the COVID-19 vaccine, and whether she put her beliefs about the sanctity

of her body into practice in other areas of her life—probe the sincerity of her professed beliefs about how she is to treat her body, not whether her professed beliefs were religious in nature.

The sincerity of the employee's professed beliefs and whether the employee adequately notified her employer that she has a religious conflict with an employment requirement are separate inquiries. *See Heller*, 8 F.3d at 1438. TPMG's arguments blur the distinction. So did the district court when it concluded that "Weiss's initial exemption request consisted of only general objections to the COVID-19 vaccine," which justified TPMG's supplemental inquiry "to help it ascertain whether Weiss's exemption request constituted a religious belief or an isolated teaching." *Weiss I*, 738 F. Supp. 3d at 1222–24; *see also Weiss II*, 751 F. Supp. 3d at 998 (adopting the reasoning of the prior order).

The district court reasoned that treating the information in Weiss's initial request as sufficient to provide notice of a religious conflict "would have resulted in a 'limitless excuse for avoiding all unwanted obligations'" because it "provided little basis for TPMG to evaluate the extent of her religious beliefs' potential conflict." *Weiss I*, 738 F. Supp. 3d at 1223 (quoting *Finkbeiner*, 623 F. Supp. 3d at 465–66). From this, the district court held that Weiss "failed to aver plausibly that she adequately informed TPMG of the conflict between her religious beliefs and [the] Policy." *Id.* at 1225. The notice requirement cannot be used as an end run around the "delicate inquiry," *Detwiler*, 156 F.4th at 893, and a court's "narrow function," *Bolden-Hardge*, 63 F.4th at 1223 (quoting *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014)), in assessing the sincerity and reasonableness of an employee's asserted religious belief. The notice

requirement measures only the sufficiency of the employer's information about the employee's religious beliefs or practices, not the validity of those beliefs and practices. *See Heller*, 8 F.3d at 1439. Nor does the notice requirement invite employers or courts to consider whether an employee's "religion mandates the employee's adherence" to the beliefs or practices asserted.[4] *Id.*

Because Weiss plausibly alleged that she informed TPMG of her "belief and conflict" with the Mandate, she has established the second element of the prima facie case for purposes of the pleading stage. *Id.* at 1438. The district court's conclusion otherwise was error.

**REVERSED and REMANDED.**

---

[4] Weiss alleged that she had "no other objection to receiving the Covid-19 vaccination other than her religious faith." Thus, even if the sincerity of her beliefs were at issue, the concern addressed in *Detwiler* about the mingling of religious and secular motivations is not implicated here. *See Detwiler*, 156 F.4th at 894–95.